The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Lawrence B. Shuping, Jr. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
* * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. Plaintiff is an unemployed, 54-year-old divorced male, who is currently receiving Social Security Disability benefits. He completed the ninth grade as well as a semester and a half at Wayne Community College, but has never received his GED or so-called high school equivalency certificate. All of his significant prior work experience has been in the construction trade as a carpenter building houses requiring him to engage in the type of physical manual labor prohibited by the permanent back injury giving rise hereto. Other than muscle spasms in his low back without associated leg pain, plaintiff had not experienced any significant back problems prior to the same injury.
2. Because of his back injury plaintiff is physically limited to sedentary work, but as a result of his prior work experience lacks any transferable skills to that type of work. The only construction job that plaintiff has had that did not require him to be actively engaged in the physical labor involved in building homes was one as a construction or building manager for Frances Whitfield and her husband, who were building some townhouses, where he was responsible for scheduling the project, but was subsequently terminated from their employ after several months.
3. From 1975 to 1983 he did carpentry work in Virginia. After returning to North Carolina, plaintiff worked for a number of local building contractors and also built two homes himself. When injured he was a self-employed framing contractor engaged in the business of sub-contracting framing work to various local general contractors and from the monies received for the same work was responsible for paying his employees and associated expenses incurred in producing revenue such as the ones shown on his stipulated 1992 and 1993 tax returns for insurance, business loans, vehicular expenses, taxes, office expenses and fees for legal and professional services.
4. At the time in question on September 29, 1993, defendant-employer was a general contractor engaged in the residential home building business and plaintiff had sub-contracted the framing work on the house the same employer was building at Lot 2 Magnolia.
5. On September 29, 1993 as part of his duly assigned ordinary employment duties as the framing sub-contractor responsible for the framing of the residence defendant-employer was constructing at Lot 2 Magnolia, plaintiff and another of his employees were involved in lifting one of the residence's walls. In the process thereof, plaintiff suffered a specific traumatic incident when he experienced an acute pulling pain in his lower back resulting in a left-sided disc herniation or rupture at the L4-L5 level of his lumbosacral spine and thereby the disabling and otherwise compensable back injury giving rise hereto manifested by back and left leg pain and weakness ultimately requiring him to undergo corrective back surgery.
6. Plaintiff took some aspirin for what he assumed was merely the same type of muscle spasms without associated leg pain that he had had in the past and was able to complete the work day despite continued back pain. He returned to work the next day and experienced a recurrence of back pain in the same area of his back when he merely bent over to pick up a board and stepped to one side. Although plaintiff was again able to complete the workday, by the following morning he could hardly get out of bed because of back and left leg pain.
7. On the same day, plaintiff sought medical treatment at Doctor's Urgent Care which prescribed medication and excused him from work until he could be re-evaluated. When plaintiff returned to Urgent Care on Monday and his condition had worsened, he was referred to Dr. Langley, a Kinston Orthopedic Surgeon, who prescribed a continued course of conservative treatment and scheduled him for a diagnostic CT-scan. On the same day, Monday, October 4, 1993, plaintiff advised defendant-employer of the involved back injury.
8. After the CT-scan showed plaintiff to have sustained a disc herniation or rupture at the L4-L5 level of his lumbosacral spine, Dr. Langley referred him for a neurosurgical evaluation to Dr. Ira Hardy of Greenville. Because his condition had not improved with conservative treatment and plaintiff had a marked neurological deficit manifested by moderate weakness of the dorsiflexors of the toes of the left foot, Dr. Hardy performed corrective surgery in October of 1993 for the left-sided disc herniation or rupture plaintiff sustained lifting the wall at work on September 29, 1993.
9. Plaintiff ultimately reached maximum medical improvement and/or the end of the healing period from and following his September 29, 1993 back injury on or about February 12, 1994, at which time he retained a 15 percent permanent partial disability of the back as a result of the same injury based on his residual pain and weakness, and because of his permanent back injury is unable to return to his regular job as a framing sub-contractor or the type of construction work that he had always done; but rather, is only physically capable of sedentary-type work.
10. As a result of the significant and symptomatic degenerative disc disease that plaintiff suffers from his permanent back injury, he will require ongoing medical care in the form of analgesics and muscle relaxants as well as physical therapy at times and may require further surgery if his L4-L5 disc space collapses and the remaining disc bulges out enough to create symptomatic spinal stenosis compressing the nerves.
11. As a result of his permanent back injury, plaintiff experiences chronic, incapacitating back and left leg pain as well as left leg weakness and the same pain worsens any time he attempts to do anything physically active and for this same reason was not a candidate for job placement by the North Carolina Department of Vocational Rehabilitation. Plaintiff can no longer bend, climb, lift or sit, stand or walk for significant periods of time without experiencing a worsening of his chronic, incapacitating pain and because of this same pain would have difficulty in performing even sedentary work that he was otherwise physically limited to by his permanent back injury.
12. There is further no evidence that the type of sedentary work required by plaintiff's permanent back injury is available for someone of his age, education, background and work experience having the physical limitations from the same injury and also suffers from chronic, incapacitating pain — much less that plaintiff could obtain such work in an open and competitive labor market; but rather, the convincing credible medical and other evidence is that type work is not available for someone suffering from plaintiff's level of incapacitating pain. Plaintiff not only made a reasonable but unsuccessful attempt to obtain the type of alternate sedentary work that he is physically limited to, but it would be futile for him to make further attempts to obtain sedentary employment because such jobs are not available for someone suffering from the degree of incapacitating pain that he does, and it is for this very reason that he was not a candidate for job placement by the North Carolina Division of Vocational Rehabilitation.
13. Although plaintiff attempted to find suitable alternate sedentary work by not only submitting applications to a number of employers, including ones to local contractors seeking a job doing "take off" work, but sought the assistance of the North Carolina Department of Vocational Rehabilitation and underwent an extensive evaluation there, including functional capacity, vocational, psychological evaluation, he was never successful in finding work himself nor is a candidate for vocational assistance because of the likelihood the job placement could not be found, which is consistent with the credible evidence it would be futile for plaintiff to make further attempts to seek alternate employment because his chronic, incapacitating back and left leg pain prevents him from performing even the type of sedentary work that he was otherwise capable of because of his permanent back injury and his condition has remained unchanged since October 2, 1993 when he initially became incapacitated by his September 29, 1993 back injury.
14. Considering the evidence, or lack thereof, the fairest method to both employer and employee of determining plaintiff's average weekly wage at the time of his injuries is to base the same on his 1992 and 1993 tax returns, which not only indicates the gross amount earned by his framing sub-contracting business and associated expenses incurred in producing the same revenue, but for more than a year prior to his injury, including the one in which he was injured in the proceeding year, which yields an average weekly wage of $303.35 and a compensation rate of $202.24.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. On September 29, 1993 plaintiff sustained an injury by accident arising out of and in the course of his employment. N.C.G.S. § 97-2 (6).
2. As a result of the permanent back injury sustained on September 29, 1993 plaintiff has remained totally disabled since October 2, 1993 entitling him to compensation at a rate of $202.24 from October 2, 1993 to the scheduled hearing date and thereafter continuing at the same rate so long as he remains totally disabled, subject to a change of condition, medical or employment. N.C.G.S. § 97-29. Baldwin v. Piedmont Woodyards, Inc. 58 N.C. App. 602
(1982).
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendant shall pay plaintiff, on account of his continuing total disability, compensation at the rate of $202.34 per week from October 2, 1993 to the scheduled hearing date and thereafter continuing at the same rate so long as he remains totally disabled, subject to a change of condition, medical or employment. Such compensation as has accrued hereunder shall be paid in a lump sum, without commutation, subject to a reasonable attorney fee hereinafter approved.
2. At this time a reasonable attorney fee in the amount of 25 percent of the accrued compensation benefits due under the above Award is hereby approved for plaintiff's counsel, which shall be deducted from the same Award and forwarded directly thereto. For the balance of the fee defendant shall forward every fourth compensation check payable hereunder directly to plaintiff's counsel.
3. To the extent that the same are reasonably designed to tend to effect a cure of, provide needed relief from and/or lessen the period of disability associated therewith, defendant shall pay all reasonable and necessary medical expenses incurred by plaintiff as a result of his September 29, 1993 back injury giving rise hereto when bills for the same are submitted in accordance with Industrial Commission rules.
4. Defendant shall bear the costs, including as part thereof the $250.00 expert witness fee previously awarded Dr. Hardy for his deposition testimony to the extent the same has not already been paid.
FOR THE FULL COMMISSION
 S/ __________________________ COY M. VANCE COMMISSIONER
CONCURRING:
S/ __________________________ DIANNE C. SELLERS COMMISSIONER
S/ __________________________ THOMAS J. BOLCH COMMISSIONER
CMV/cnp/mj 3/26/96